■ Manuel Mata, Appellant, v The Park Here Garage Corp. et al., Respondents. The Park Here Garage Corp., Third-Party Plaintiff-Respondent, v Jonathan & Gabrielle Parking Inc., Third-Party Defendant-Respondent. (And a Second Third-Party Action.) [896 NYS2d 57]—

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered June 23, 2008, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for summary judgment on the issue of liability under Labor Law § 240 (1) and granted defendants' cross motions for summary judgment dismissing the Labor Law § 241 (6) claim, modified, on the law,

plaintiff's motion granted, the matter remanded for assessment of damages, and otherwise affirmed, without costs.

Plaintiff, an independent contractor, was engaged to repair an inoperative rolling garage gate permanently affixed to a structure used as a commercial parking facility (*see Izrailev v Ficarra Furniture of Long Is.*, 70 NY2d 813, 815 [1987]). The work required the removal of a 300-pound tube-and-spring assembly from brackets securing it to the top of the garage entranceway, more than 10 feet above the ground. Plaintiff improvised a pulley system consisting of a length of chain draped over an upper rung of his own extension ladder and attached to the assembly. As plaintiff and his coworker were lowering the assembly, one end struck the ground, causing the ladder to move. Plaintiff, who was standing on the ladder, lost his balance and fell to the sidewalk below, fracturing his wrist.

Plaintiff's injury is "the direct consequence of a failure to provide statutorily required protection against a risk plainly arising from a workplace elevation differential," in which "the harm flows directly from the application of the force of gravity to the object" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 604, 605 [2009]; *cf. Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). Here, it is undisputed that plaintiff's work entailed the removal of a 300-pound assemblage comprising part of a metal gate and secured above the entranceway of a building or structure. For this type of work, Labor Law § 240 (1) requires that a worker be provided with appropriate safety devices, as enumerated in that section, such as scaffolding or a hoist, hanger or pulley. The only safety device defendants made available was an A-frame ladder, and their failure to provide adequate safety devices under section 240 (1) renders them liable for plaintiff's injuries as a matter of law (*Velasco v Green-Wood Cemetery*, 8 AD3d 88 [2004]). Defendants do not explain how an A-frame ladder would have provided adequate protection. That plaintiff's improvisational use of his own extension ladder might be viewed as inappropriate is not material since a worker's contributory negligence does not bar recovery under section 240 (1) (*see Bland v Manocherian*, 66 NY2d 452, 459-460 [1985]; *Velasco*, 8 AD3d at 89; *Hernandez v 151 Sullivan Tenant Corp.*, 307 AD2d 207, 208 [2003]).

Labor Law § 241 (6), however, is inapposite because plaintiff was not performing his work in the context of construction, demolition or excavation (*see Caban v Maria Estela Houses I Assoc., L.P.*, 63 AD3d 639, 640 [2009]). Concur—Tom, J.P., Renwick, Freedman and Román, JJ.

Nardelli, J., dissents in part in a memorandum as follows: I

agree with the majority that plaintiff's claim under Labor Law § 241 (6) should be dismissed, but cannot agree that plaintiff should be granted summary judgment on the Labor Law § 240 (1) claim. There are, I respectfully submit, questions of fact as to whether there was even a violation of the statute, and, even more importantly, as to whether plaintiff's actions were the sole proximate cause of the accident. These questions must first be resolved before inquiry is made as to whether other safety devices could have prevented the accident.

On May 9, 2003, plaintiff arrived at a commercial parking facility owned by defendant Park Here Garage, and leased by defendant Jonathan & Gabrielle Parking, to, in his words, "repair a roll-up metal gate that was attached along the entranceway." Plaintiff himself stated that he is "a self-employed construction worker who specializes in welding, installing and repairing roll-up gates." He is paid in cash. At the garage no one instructed him on how to do his work. He was only told what work needed to be done by the person who he believed was the garage manager. At the garage he was assisted only by his nephew, Ramon Martell, whom he hired, and paid.

At the time of the accident, plaintiff was removing a long tube and spring placed above the entranceway, an assemblage which was quite heavy. Plaintiff used his own aluminum extension ladder while working, which he placed against the building's exterior in the middle of the entranceway. He had brought the ladder to the job location in his own van, which contained all the materials he intended to install or use in the repairs.

The ladder had rubber feet which set automatically and adjusted to the surface beneath them to protect against slippage. At the time of the accident, plaintiff claimed he had placed the ladder on level ground. Plaintiff had never experienced any problems with the ladder, and had used it previously on the day of the accident. There was, however, another ladder—an A-frame—at the premises, which plaintiff elected not to use while removing the assemblage. His nephew, Martell, had used the A-frame ladder earlier, while removing screws from the tubing by cutting them, without experiencing any problem with the ladder. After removing the brackets that held the tube assemblage in place, plaintiff and Martell used a chain, which he had also brought to the location, to devise a pulley system, with one end of the chain hooked to a rung near the top of the extension ladder, and the other end wrapped around the tube assemblage. Plaintiff stood on the ladder to make sure the chain did not become stuck, while Martell stood on the sidewalk below,

pulling the chain to lower the tube. As the tube lowered, it tilted and one of its ends struck the ground, causing the ladder to move. Plaintiff lost his balance and fell to the ground, fracturing his left wrist. The ladder did not topple, but remained upright, leaning against the building.

Monelys Alcantara, a nonparty witness who observed the incident from his automobile body shop across the street, testified at a deposition that the sidewalk outside the garage is inclined approximately five or six inches, which caused the ladder to tilt to the left as it leaned against the building. Alcantara yelled to the men that they should "tie that ladder very well" because it was leaning, but the men did not respond.

In reversing the motion court's denial of summary judgment, the majority agrees that the A-frame ladder was supplied, but concludes, without elaboration, that as a matter of law this was insufficient to meet defendants' obligations under the statute.

The Court of Appeals has made clear that "there can be no liability under section 240 (1) when there is no violation and the worker's actions . . . are the 'sole proximate cause' of the accident," regardless of whether or not the injured worker is recalcitrant (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]). Moreover, not every ladder injury leads "ineluctably" to liability under section 240 (1) (*id*. at 292).

In this case, as the majority observes, an A-frame ladder was available for plaintiff's use. The A-frame had been used by his assistant previously, without problems. There is testimony that the extension ladder plaintiff was using at the time of the accident was placed on an uneven surface. Notwithstanding the availability of the A-frame, and the possibly hazardous footing on which the extension ladder was placed, plaintiff, a self-described specialist in installing and repairing roll-up gates, chose instead to use the extension ladder, and to affix a chain to one of its rungs as he lowered the assemblage. The accident occurred when the ladder was shaken as the tube was lowered.

Plaintiff, who had 23 years of experience in his trade at the time of the accident, and had been self-employed for six or seven years, made the decision to use the extension ladder rather than the A-frame defendants had made available, of his own volition. I submit that a question of fact is presented as to whether there was even a violation of the Labor Law, since the A-frame was available. I also suggest there is a question of fact as to whether the "sole proximate cause" of the accident was plaintiff's decision to use the extension ladder, and tie the chain to it for use as a pulley. The Court of Appeals has determined that a worker's use of an inadequate ladder when a better one is available con-

stitutes conduct which can be found to be the sole proximate cause of the accident, as a matter of law (*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 555 [2006]; *see also Montgomery v Federal Express Corp.*, 4 NY3d 805 [2005]).

While I recognize that section 240 (1) is to be liberally construed, it " 'must not be strained' to accomplish what the Legislature did not intend" (*Blake*, 1 NY3d at 292, quoting *Martinez v City of New York*, 93 NY2d 322, 326 [1999]). Plaintiff, a self-proclaimed specialist, made the decision to proceed with the extension ladder. Moreover, this experienced "specialist" came to the job site without any of the equipment he now claims was essential to perform the work in compliance with the strictures of the Labor Law, and contends the garage should have supplied. The question is begged—why did he, an individual who employs others, not have this "essential" equipment.

The purpose of the statute is to place "ultimate responsibility for safety practices on owners and contractors, rather than on the workers, who as a practical matter lack the means of protecting themselves from accidents" (*Martinez*, 93 NY2d at 325). Plaintiff here, like the plaintiff in *Blake*, was self-employed, and thus able to make his own necessary decisions to use appropriate equipment to protect himself. The jury should decide whether his intentional actions, rather than the omissions of defendants, caused the accident. As this Court has made clear, "the strict liability benefit of Labor Law § 240 (1) is not available to a worker whose own act in failing to use an otherwise adequate safety device properly is the sole proximate cause of his injury" (*Meade v Rock-McGraw, Inc.*, 307 AD2d 156, 160 [2003]).

I would affirm.