## Jackson v 501 Madison-Sutton LLC

2025 NY Slip Op 31668(U)

May 6, 2025

Supreme Court, New York County

Docket Number: Index No. 156995/2022

Judge: Richard G. Latin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. RICHARD G. LATIN                    PART               46M

*Justice*

-----------------------------------------------------------------------------X

MICHAEL JACKSON,

                                   Plaintiff,

                         - v -

501 MADISON-SUTTON LLC,

                               Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 156995/2022 |
| MOTION DATE | 10/25/2024, 10/28/2024 |
| MOTION SEQ. NO. | 002 003 |

## DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 002) 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 60, 61, 63, 81, 82, and the provided video exhibits

were read and considered on this motion to/for                   SUMMARY JUDGMENT

.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 62, 64, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, and the provided video exhibits

were read and viewed on this motion to/for                 SUMMARY JUDGMENT

.

     In this Labor Law action, plaintiff Michael Jackson, a former union metal polisher, sues to recover damages for personal injuries allegedly sustained at a work site located at 501 Madison Avenue (the premises) on July 2, 2022, when the A-frame ladder on which he was standing allegedly shifted and caused plaintiff to fall to the ground.

     In motion sequence no. 002, plaintiff moves for partial summary judgment on the issue of liability on his Labor Law § 240 (1) claim against defendant 501 Madison – Sutton LLC (501 Madison). 501 Madison cross-moves for summary judgment dismissing plaintiff's claim under Labor Law § 240 (1).[1]

---

[1] 501 Madison's cross-motion appears in the New York State Courts Electronic Filing system (NYSCEF) as motion seq no. 003. However, 501 Madison's earlier-filed motion for summary judgment, seeking an order dismissing plaintiff's claims for common-law negligence and violations of Labor Law §§ 200 and 241 (6) is correctly filed as motion seq no. 003. To the extent plaintiff objects to the cross-motion as untimely in violation of this court's rules, "[a]n otherwise untimely cross motion may be made and

[* 1]

In motion sequence no. 003, 501 Madison moves for summary judgment with respect to plaintiff's claims for common-law negligence and violations of Labor Law §§ 200 and 241 (6).

For the reasons set forth below, plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim is granted. Defendant's motion for summary judgment on plaintiff's common-law negligence and Labor Law §§ 200 and 241 (6) claims is also granted. 501 Madison's cross-motion for summary judgment is denied.

## BACKGROUND

On the day of the accident, 501 Madison owned the premises (NYSCEF Doc No. 69, affirmation of defendant's counsel, statement of material facts ¶ 28). 501 Madison hired SAS Metal Maintenance (SAS), a metal-polishing company, to perform internal and external metal work on the premises (*id.* at ¶ 30; NYSCEF Doc No. 42, DeMicco tr at 14, lines 18-25, through 15, lines 2-6). SAS employed plaintiff (NYSCEF Doc No. 50, Jackson complaint ¶ 30).

*Plaintiff's Deposition Testimony*

Plaintiff testified that the project involved work consisting of masking, stripping, and relacquering the building's window trims, which were 25 or 30 feet high around the premises, including on the side and in front of the building (NYSCEF Doc No. 41, Jackson tr at 24, lines 21-25), the bronze entrance (*id.* at 24, lines 6-11), and the panel above a revolving door (*id.*). According to plaintiff, on the day of the accident, his duties included picking up his work truck (*id.* at 14, lines 22-24) and an eight-foot A-frame ladder from SAS's shop in Brooklyn (*id.* at 33,

---

adjudicated because a court, in the course of deciding the timely motion, may search the record and grant summary judgment to any party without the necessity of a cross motion" (*Filannino v Triborough Bridge & Tunnel Auth.*, 34 AD3d 280, 281 [1st Dept 2006], *appeal dismissed* 9 NY3d 862 [2007]). Thus, this court will, in its discretion, address the merits of the application.

[* 2]

lines 4-7). Once at the premises, plaintiff's task was to work on the front entrance, the revolving door

frame, and the panel above the revolving door (*id.* at 51, lines 21-25, through 52, lines 2-8), including masking (*id.* at 36, lines 19-23), applying paper and tape to cover the glass and the walls (*id.* at 36, lines 24-25, through 37, lines 2-3; 52, lines 22-25), stripping with acetone (*id.* at 52, lines 2-4), and highlighting (*id.*).

Plaintiff testified that he took instructions regarding his work from either his SAS supervisor or from the owner of SAS by phone or through text (*id.* at 13, lines 13-25, through 14, line 2; 27, lines 15-18; 31, lines 12-15; 37, lines 10-25, through 38, lines 2-6). Plaintiff's instructions for the work he performed on the day of the accident included the directive to use an eight-foot ladder (*id.* at 32, lines 18-25, through 33, lines 2-3).

On July 2, 2022, plaintiff arrived at the premises at 6:30 a.m. (*id.* at 29, lines 8-12). That day, plaintiff was working with another SAS employee, his partner, Eddie Cruz (*id.* at 12, lines 20-25). As soon as he arrived, plaintiff and his partner began masking (*id.* at 36). Then, they applied paper and tape to cover the glass, the walls, the window, and the bottom panel in the area of the front entrance and the revolving door frame (*id.* at 36, lines 24-25, through 37, lines 2-3) and "started stripping with acetone, and highlighting with the top panel, and the doors on the side" (*id.* at 53, lines 2-4). For about 30 to 45 minutes prior to the accident, plaintiff worked in front of and on the revolving door (*id.* at 52, lines 9-19).

The work on the band across the revolving door required the use of the eight-foot, aluminum ladder plaintiff had retrieved from SAS's workshop earlier that morning (*id.* at 32, lines 22-25, through 33, lines 2-3; 52, lines 5-8). The ladder had seven rungs and a top (*id.* at 555). Plaintiff erected the ladder himself (NYSCEF Doc No. 74, Jackson tr at 9, lines 21-25, through 10,

[* 3]

lines 2-3). At the time of the accident, the ladder was positioned in front of the revolving door facing the wall with the revolving door to its right (NYSCEF Doc No. 41, Jackson tr at 55, lines 19-25, thorough 56, lines 2-3). According to plaintiff, he could not use a lift or a scaffold for the particular work he performed that day because a lift was not necessary, and a scaffold would be too bulky (*id.* at 33, lines 8-12). Plaintiff also testified that there were no tie-offs at the worksite, which are required for safety equipment such as harnesses (*id.* at 57, lines 22-25, through 58, lines 2-3).

The accident took place between 7:30 a.m. and 8:00 a.m. while plaintiff was using the ladder to strip metal with acetone (*id.* at 61, lines 14-25, through 62, line 2). Plaintiff climbed up the ladder and stepped with his right foot onto the seventh rung beneath the top (*id.* at 63, lines 3-18). When he lifted his left leg to step up, the ladder "buckled," shook, and moved to the right, causing him to fall (*id.* at 63, lines 19-25, through 64, lines 7-12). Plaintiff fell to the ground (*id.* at 65, lines 11-13) and lost consciousness (*id.* at 64, lines 9-10). At the time he fell, plaintiff was at a height of between 11 and 13 feet, with his feet at approximately seven feet from the ground (*id.* at 68, lines 13-22).

Plaintiff testified that as a result of the accident, he remained in a coma for a week (*id.* at 76, lines 18-21). Additionally, he sustained injuries consisting of a punctured lung, multiple facial fractures, rib fractures, back fracture, a brain bleed, herniated disks in his neck, and nerve damage in his face and neck (NYSCEF Doc No. 74, Jackson tr at 20, lines 8-11; 21, lines 5-22; 35, lines 2-4); 39, lines 3-14).

*Deposition Testimony of Anthony DeMicco (Superintendent)*

On the day of the accident, DeMicco was the building's superintendent (NYSCEF Doc No. 42, DeMicco tr at 8, lines 17-25, through 9, lines 2-25). Every year, DeMicco contacted SAS to

[* 4]

schedule metal work for the building, consisting of external cleaning of the metal and work on the elevator cabs inside the building (*id.* at 14, lines 18-25, though 15, lines 2-6). The metal work took place annually in the spring or early summer (*id.* at 18, lines 23-25, through 19, lines 2-9; *id.* at 20, lines 3-15). According to DeMicco, SAS performed metal maintenance for the building for at least ten years (*id.* at 35, lines 2-9).

DeMicco described SAS's work as a process (*id.* at 15, line 10). As part of the process, SAS first used a lift to complete work on the second floor of the building (*id.* at 15, lines 16-19). After that, SAS worked on the metal on the ground floor (*id.* at 15, line 19). The entrance work was last, and SAS usually worked on it for a couple of Saturdays (*id.* at 15, lines 20-25). The project generally lasted between two and two-and-a-half weeks (*id.* at 48, lines 22-25, through 49, lines 2-8).

DeMicco testified that neither he nor the building's owner directed or controlled the work of SAS workers (*id.* at 19, lines 10-25, through 20, line 2). As far as DeMicco knew, besides the ladder, there were no other safety devices for plaintiff to use, and SAS workers brought their own "stuff" (*id.* at 36, lines 4-14).

On the day of the accident, DeMicco was at the premises, but did not witness plaintiff fall (*id.* at 11, lines 21-25, through 12, lines 2-4). A couple of minutes after the accident, DeMicco was coincidentally outside the building and observed the building's security guard waving him into the lobby (*id.* at 24, lines 18-25). When he got closer, he saw plaintiff on the floor (*id.*) and called 911 (*id.* at 29, lines 22-25, through 30, line 2).

After the accident, DeMicco reviewed security footage and preserved video of plaintiff's fall (*id.* at 30, lines 10-25, through 31, 2-7). DeMicco testified that upon his review of the video, his understanding was that the ladder shifted and plaintiff fell to the ground (*id.* at 32, lines 4-11).

DeMicco testified that the 5 minute and 33 second video marked as plaintiff's exhibit 4 was the video he took from the building's surveillance system and that it accurately depicted the 5 minutes and 33 seconds of the video he saved (*id.* at 48, lines 5-12). He also testified that he composed an incident report around the time of the accident but could not remember the contents of the incident report (*id.* at 49, lines 16-21; *id.* at 50, lines 21-24).

### *The Incident Report*

According to DeMicco's incident report form dated July 2, 2022, the security guard heard a noise, went outside, and saw plaintiff on the floor (NYSCEF Doc No. 57, incident report, exhibit H). The handwritten statement attached to the form essentially mirrors DeMicco's deposition testimony. In the handwritten statement, DeMicco memorialized watching the video footage of the accident and stated that "video shows Michael going up the steps of the 8ft ladder he was working on and when he went to go to the 2nd step from top, the ladder gave way and Michael fell off towards sidewalk."

### *Locasio Affidavit*

Steven Locasio, a lead manager for SAS, submitted an affidavit in support of defendant's cross motion (NYSCEF Doc No. 79, Locasio aff ¶ 1). According to Locasio, as a lead manager he had personal knowledge of SAS's work, projects, and equipment (*id.*). Locasio described the ladder as an eight-foot A-frame ladder (*id.* at ¶ 3) with a manufacture date of 2005 (*id.* at ¶ 4), which has been in regular use and circulation since the accident (*id.* at ¶ 5). Locasio stated that "the spreaders on the ladder were bent as a result of the accident and then further bent in order to fold the ladder closed" but that the ladder was structurally sound before and after the accident (*id.* at ¶¶ 7 & 8)

## **DISCUSSION**

*Summary Judgment Standard*

On a motion for summary judgment, the proponent bears the initial burden of making a prima facie showing that it is entitled to summary judgment as a matter of law, providing sufficient evidence that no material issues of triable fact exist (*Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc.*, 36 NY3d 69, 74 [2020]; *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Once the moving party meets its burden, the burden shifts to the party opposing the motion to "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim . . . mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *see also De Lourdes Torres v Jones*, 26 NY3d 742, 763 [2016]). The function of the summary judgment procedure is issue-finding, not issue-determination (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957], *rearg denied* 3 NY2d 941 [1957]; *Vega v Restani Constr. Corp.*, 18 NY3d 499, 505 [2012] ["It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact."]). When considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the non-moving party" (*Jacobsen v New York City Health & Hosps. Corp.*, 22 NY3d 824, 833 [2014] [internal quotation marks and citation omitted]; *De Lourdes Torres*, 26 NY3d at 763).

*The Labor Law § 240 (1) Claim*

Plaintiff argues he is entitled to summary judgment as a matter of law because 501 Madison is undisputably the owner of the premises; plaintiff engaged in a covered activity while working at an elevation; and the eight-foot unsecured ladder on which he worked moved causing him to fall and sustain injuries. 501 Madison cross-moves for summary judgment dismissing the claim against it, arguing that the work plaintiff performed was routine maintenance involving annual cleaning of the building's exterior not covered by the statute. 501 Madison further argues that plaintiff's section 240 (1) claim should be dismissed because plaintiff was the sole proximate cause of the accident where he misused the ladder by stepping on its seventh rung.

Labor Law § 240 (1) provides, in relevant part, that

"[a]ll contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building . . . shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) imposes a nondelegable duty upon owners and general contractors to provide "appropriate safety devices to workers who are subject to elevation-related risks" (*Saint v Syracuse Supply Co.*, 25 NY3d 117, 124 [2015] [citation omitted], citing *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 512 [1991]; *Jamil v Concourse Enters.*, 293 AD2d 271, 272 [1st Dept 2002]). Because the purpose of Labor Law § 240 (1) is "to protect workers by placing ultimate responsibility for safety practices on owners and contractors instead of on workers themselves" (*Panek v County of Albany*, 99 NY2d 452, 457 [2003] [citations omitted]), the statute "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (*Saint*, 25 NY3d at 124 [quotation marks and citations omitted]).

To prevail on a motion for summary judgment pursuant to Labor Law § 240 (a) (1), a plaintiff must show both that "the statute was violated and that the violation proximately caused

his injury" (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]). Thus, plaintiff bears the initial burden of showing that there was an elevation-related risk and that the owner did not provide him with adequate safety devices (*Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 681 [2007]). Because the duty to provide safety devices pursuant to Labor Law § 240 (1) is absolute, contractors and owners who breach that duty are liable regardless of whether they actually exercised supervision or control over the work (*Blake*, 1 NY3d at 287) and whether plaintiff's negligence contributed to the accident (*id.*).

Section 240 (1) "mandates that owners and contractors provide devices which shall be so constructed, placed and operated as to give proper protection to persons performing work covered by the statute" (*Rivera v 712 Fifth Ave. Owner LP*, 229 AD3d 401, 402 [1st Dept 2024], citing *Montalvo v J. Petrocelli Const., Inc.*, 8 AD3d 173, 174 [1st Dept 2004]). To establish liability under the statute, "[i]t is sufficient . . . that adequate safety devices to prevent the ladder from slipping or to protect the plaintiff from falling were absent" (*Rivera*, 229 AD3d at 402, citing *Montalvo,* 8 AD3d at 174). In *Rivera*, the Court found the "plaintiff's testimony that he was not provided with any other safety protection except an unsecured ladder," which fell when a falling duct struck the plaintiff and the ladder, "established prima facie entitlement to judgment as a matter of law" (*Rivera*, 229 AD3d at 402 [citation omitted]).

The collapse of a ladder is prima facie proof of a violation of Labor Law § 240 (1) (*Melendez v 1595 Broadway LLC*, 214 AD3d 600, 601 [1st Dept 2023] ["Plaintiff made a prima facie showing that his injuries were proximately caused by a violation of Labor Law § 240(1) by submitting his testimony that the unsecured extension ladder that he was using to descend from a sidewalk bridge slid and collapsed under him"]; *see Garcia v Church of St. Joseph of the Holy*

*Family of City of N.Y.*, 146 AD3d 524, 525 [1st Dept 2017] ["Plaintiff's testimony that the ladder shifted as he descended, thus causing his fall, established a prima facie violation of Labor Law § 240(1)"]; *see also Vega v Rotner Mgt. Corp.*, 40 AD3d 473, 474 [1st Dept 2007] ["[P]laintiff satisfied his prima facie burden on the motion with his testimony that he fell to the ground when the unsecured 8 to 10–foot ladder on which he was standing shifted" (citation omitted)]; *accord Nelson v Ciba-Geigy*, 268 AD2d 570, 572 [2d Dept 2000] ["Whether the device provided proper protection is a question of fact, except when the device collapses, moves, falls, or otherwise fails to support the plaintiff"]).

Here, plaintiff established his prima facie entitlement to summary judgment on his Labor Law § 240 (1) claim against 501 Madison because the ladder did not protect him from falling while he worked. To that end, plaintiff testified that the ladder "buckled," shook, and moved to the right, causing him to fall (NYSCEF Doc No. 41 at 63, lines 19-25, through 64, lines 7-12). Plaintiff's testimony is supported by the testimony of Anthony DeMicco and the incident report. DeMicco testified that based on his observation of the security footage, his understanding was that the ladder shifted. In the incident report, DeMicco wrote that the video showed the ladder give way. Thus, plaintiff demonstrated that he was injured because defendant failed to furnish him with a proper safety device, which constitutes a prima facie violation of Labor Law § 240 (1) (*see Eustaquio v 860 Cortland Holdings, Inc.*, 95 AD3d 548, 548 [1st Dept 2012]; *see also Carchipulla v 6661 Broadway Partners, LLC*, 95 AD3d 573, 573-574 [1st Dept 2012]).

As plaintiff has demonstrated a prima facie violation of Labor Law §240 (1), the burden shifts to defendants to submit evidence sufficient to raise a triable issue of fact (*see Gallagher v New York Post,* 14 NY3d 83, 88 [2010]; *see also Blake*, 1 NY3d at 293 n 8). Defendants have failed to meet this burden.

In opposition to the motion, 501 Madison does not contest that it was the owner of the property, that the ladder was unsecured, or that plaintiff was not provided with any safety devices. Rather, defendant argues that plaintiff performed annual cleaning of the exterior of the building in the course of normal wear and tear, constituting routine maintenance, which is not a covered activity under Labor Law § 240 (1). This argument must be rejected.

It is well-settled that "'cleaning' is separately listed as a covered activity and had been expressly afforded protection under section 240(1) whether or not incidental to any other enumerated activity" (*Soto v J. Crew Inc.*, 21 NY3d 562, 566 [2013], citing *Broggy*, 8 NY3d at 680 [internal quotation marks omitted]). In *Soto*, the Court of Appeals set forth a four-factor analysis to assist in determining whether an activity could be characterized as "cleaning" under the statute (*Soto*, 21 NY3d at 568). Under this analysis, an activity cannot be characterized as "cleaning" within the ambit of the statute if the work:

> "(1) is routine, in the sense that it is the type of job that occurs on a daily, weekly or other relatively-frequent and recurring basis as part of the ordinary maintenance and care of commercial premises; (2) requires neither specialized equipment or expertise, nor the unusual deployment of labor; (3) generally involves insignificant elevation risks comparable to those inherent in typical domestic or household cleaning; and (4) in light of the core purpose of Labor Law § 240 (1) to protect construction workers, is unrelated to any ongoing construction, renovation, painting, alteration or repair project" (*id.*).

Plaintiffs need not establish the presence of all four factors, "if, viewed in totality, the remaining considerations militate in favor of placing the task in one category or the other" (*id.* at 569).

The First Department's decision in *Dorador v Trump Palace Condominium*, 126 AD3d 603 [1st Dept 2015] is directly on point. In *Dorador*, upon a review of the *Soto* factors, the motion court found that the plaintiff engaged in the covered activity of "cleaning" (*id.* at 603). The First Department affirmed and reasoned that the "[p]laintiff's application of masking tape to windows

in preparation for stripping and relacquering of the brass on the facade of Trump's building is not the type of task that is performed on a relatively frequent and recurring basis as part of ordinary maintenance" (*id.*). The Court further held that the "plaintiff's work on a scaffold six to seven feet above the sidewalk involved a significant elevation risk" (*id.* [citation omitted]).

Applying the *Soto* factors here, 501 Madison focuses on DeMicco's testimony that the metal cleaning took place every year and that there was no other construction work in progress at the premises. However, DeMicco also testified that he had to call SAS to schedule the work and that he could not remember whether the work had been done in 2020 or in 2021 (NYCEF Doc No. 42 at 18, lines 23-25, through 19, lines 2-9; 20, lines 16-25, through 21, lines 2-9). Thus, the work here was not in the nature of routine maintenance "since it did not occur on a recurring schedule as part of the ordinary care of the premises" (*Mazzarisi v New York Socy. for the Relief of Ruptured & Crippled*, 205 AD3d 424, 425 [1st Dept 2022], *lv dismissed* 39 NY3d 971 [2022] [reversing the lower court's holding that the power washing of chiller coils was routine maintenance where it was performed pursuant to a five-year preventative maintenance agreement and the cleaning was taking place for the third time in year three of the five-year period covered by the agreement (*see Mazzarisi v New York Socy. for the Relief of Ruptured & Crippled*, 2020 NY Slip Op 33837[U] [Sup Ct, New York County 2020])]).

Here, it is undisputed that plaintiff used specialized equipment, including numerous chemicals, as well as scrapers, razer (sic) blades, compressing strippers, sandpaper, in addition to a compressor and a gun for painting (NYSCEF Doc No. 41 at 14, line 24, through 15, lines 2-9; 43, lines 14-19; 45, lines 3-11) (*see Ixcoy v Pavlou*, 189 AD3d 542, 542 [1st Dept 2020]). Moreover, plaintiff testified that he performed only metal work for SAS (NYSCEF Doc No. 41 at 11, lines 20-21); that he had been a member of the Metal Polishing Union since 1997 (*id.* at 17,

[* 12]

lines 2-9); that he took training classes when he joined the union (*id.* at 20, lines 2-6); and that he "had to continue to update whatever was out of date" (*id.* at 20, lines 7-10). Thus, he possessed the requisite special expertise (*see Ixcoy*, 189 AD3d at 542).

It is of no consequence that plaintiff's work was not part of construction at the building. Plaintiff testified that the work he performed was part of a larger project involving the re-lacquering of the bronze around window trims and the building's entrance (*id.* at 24, lines 6-25, through 25, lines 2-5) and that he had worked at the premises for about a week-and-a-half a few weeks prior to the accident (*id.* at 22, lines 23-25, through 23, lines 2-3). DeMicco's testimony is consistent. When viewed in totality, the considerations in the instant matter militate in favor of categorizing plaintiff's work as the kind of covered activity contemplated by the statute because, like in *Doridor*, his tasks of stripping, oxidizing, and relacquering metal at an elevation requiring the use of an eight-foot ladder "involved elevation risks not comparable to those encountered in domestic cleaning" (*Mazzarisi*, 205 AD3d at 425).

Defendant's argument that plaintiff was the sole proximate cause of the accident is equally unpersuasive. Defendant contends that plaintiff was the sole proximate cause of the accident because the ladder was not defective and that the accident occurred when plaintiff misused the eight-foot ladder by stepping on its seventh rung. In support of this argument, defendant points to the video of the accident, which shows plaintiff stepping on the seventh rung. Defendant also offers an affirmation from an expert explaining that stepping on the seventh rung constituted misuse of the ladder (NYSCEF Doc No. 80, Pfreundschuh affirmation, exhibit K at 10-11).

The court rejects this argument. There are no triable issues of fact about whether plaintiff's negligence was the sole proximate cause of the accident. First, plaintiff was not required to show that the ladder was defective (*Cuomo v Port Auth. of N.Y. & N.J.*, 228 AD3d 402, 402 [1st Dept

[* 13]

2024]; *Carchipulla*, 95 AD3d at 573). Second, plaintiff's alleged misuse of the ladder "was at most comparative negligence, which is not a defense to a Labor Law § 240(1) claim" (*Cuomo*, 228 AD3d at 402 [citation omitted]; *see DiBrino v Rockefeller Ctr. N., Inc.*, 230 AD3d 127, 131 [1st Dept 2024] [holding where the defendant claimed that the plaintiff caused his fall off a six-foot A-frame ladder by his own overreaching, "even if plaintiff fell because he lost his footing on the ladder, this does not defeat plaintiffs' Labor Law § 240(1) claim"] [citations omitted]; *Vega v Rotner Mgt. Corp.*, 40 AD3d 473, 474 [1st Dept 2007] ["It does not avail defendants to argue that the manner in which plaintiff set up and stood on the ladder was the sole cause of the accident, where there is no dispute that the ladder was unsecured and no other safety devices were provided"]; *Noor v City of New York*, 130 AD3d 536, 540 [1st Dept 2015], *lv dismissed* 27 NY3d 975 [2016] ["A worker's decision to use an A–frame ladder in the closed position is not a per se reason to declare him the sole proximate cause of an accident" (citation omitted)]). Third, an expert's affidavit based on an examination of the subject ladder—which had remained in use after the accident—and the worksite more than two years after the accident is speculative and insufficient to raise an issue of material fact (*Tuzzolino v Consol. Edison Co. of New York*, 160 AD3d 568, 568 [1st Dept 2018] ["[D]efendant's expert's opinion that the accident was caused by plaintiff's misuse of the ladder was entirely speculative, since it was based on his visit to the accident site almost two years after the accident occurred"]; *Rivera*, 229 AD3d at 403 ["Moreover, [the expert's] assertion that the ladder was not defective and that if the ladder fell, the fall was caused by plaintiff, was mere conjecture and insufficient to rebut plaintiff's testimony."]). Finally, there is no question that, as here, "[f]or purposes of liability under section 240(1), [i]t is sufficient ... that adequate safety devices to prevent the ladder from slipping or to protect the plaintiff from

falling were absent" (*Rivera*, 229 AD3d at 402, citing *Motalvo*, 8 AD3d at 175 [internal quotation marks omitted]).

For the sole proximate cause defense to apply, the accident must have been caused "exclusively" by plaintiff's own acts (*Kyle v City of New York*, 268 AD2d 192, 196 [1st Dept 2000], *lv denied* 97 NY2d 608 [2002]). Any alleged contributory or comparative negligence on plaintiff's part is irrelevant (*Mata v Park Here Garage Corp.*, 71 AD3d 423, 424 [1st Dept 2010] ["[A] worker's contributory negligence does not bar recovery under§ 240(1)" (citations omitted)]; *Velasco v Green-Wood Cemetery*, 8 AD3d 88, 89 [1st Dept 2004] ["Given an unsecured ladder and no other safety devices, plaintiff cannot be held solely to blame for his injuries"]).

Here, plaintiff established that, while he worked at a height of between 11 and 13 feet using an eight-foot ladder as instructed by his supervisors, the ladder moved causing him to fall. It is uncontroverted that no other safety device was available to plaintiff. Defendant failed to proffer evidence establishing that plaintiff's accident was caused solely by plaintiff's own conduct or to raise a triable issue of fact necessitating a trial. Accordingly, plaintiff's motion for summary judgment on his Labor Law § 240 (1) claims is granted, and defendant's cross-motion is denied.

### Labor Law § 200 and Labor Law § 241 (6) Claims

In motion seq. 003, defendants seek dismissal of plaintiffs' common law negligence, Labor Law § 200, and Labor Law § 241 (6) claims. Plaintiff has not opposed defendant's motion for summary judgment on these claims. For this reason, plaintiffs remaining claims are deemed abandoned and are hereby dismissed (*see Josephson LLC v Column Fin., Inc.*, 94 AD3d 479, 480 [1st Dept 2012].

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff Michael Jackson's motion (Motion Seq. 002), pursuant to CPLR 3212, for summary judgment in his favor as to liability on the Labor Law § 240 (1) claim is granted as against defendant 501 Madison-Sutton LLC; and it is further

**ORDERED** that defendant 501 Madison-Sutton LLC's cross-motion is denied; and it is further

**ORDERED** that defendant 501 Madison-Sutton LLC's motion (Motion Seq. 003), pursuant to CPLR 3212, for summary judgment in its favor as to liability on the Labor Law § Labor Law § 200 and Labor Law § 241 (6) claims is granted to the extent of dismissing plaintiff's Labor Law § 200 and Labor Law § 241 (6) claims; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly; and it is further

**ORDERED** that counsel for plaintiff shall serve a copy of this Order with Notice of Entry within 20 days of entry on all parties.

| **5/6/2025** | | | | |
|---|---|---|---|---|
| **DATE** | | | **RICHARD G. LATIN, J.S.C.** | |
| **CHECK ONE:** | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER | |
| **APPLICATION:** | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE | |